IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-001173-WYD-MEH

PURZEL VIDEO GmbH,

      Plaintiff,

v.

ANTHONY MARTINEZ, and
DERRICK ANDERSON,

      Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff has filed an Amended Motion and Memorandum for Default Judgment against Derrick Anderson [filed November 13, 2013; docket #59]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to me for a Report and Recommendation. (Docket #61). Based upon the record and for the reasons that follow, the Court recommends that the District Court **grant in part and deny in part** the motion as set forth herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United*

## BACKGROUND

In this case, Plaintiff's allegations involve a complicated technical process used to download copyrighted works (here, motion pictures) through the BitTorrent program; therefore, this Court finds it necessary first to explain how BitTorrent works, then to note its findings of fact in this case.

I.      **BitTorrent Protocol**

Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program.  This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used with the protocol, then describes how BitTorrent operates.  *Id.* at *1-*3.  First, the vocabulary used in the technology:

*Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.

*IP Address:* The unique identifying number of a device connected to the internet.

*Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.

*File:* A collection of related data packets treated as a unit.

*Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.

*Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.

_____

*States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

*BitTorrent:* A peer-to-peer file sharing protocol.

*Peer:* A BitTorrent user.

*Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).

*Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.

*Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.

*Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.

*Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).

*Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.

*Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted).  Judge Ludington proceeds to

describe the protocol and how BitTorrent works:

BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."

. . .

Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available

3

to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."

Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:

1. Install BitTorrent (or have done so already).
2. Surf the web.
3. Click on a link to a *.torrent* file.
4. Select where to save the file locally, or select a partial download to resume.
5. Wait for download to complete.
6. Tell downloader to exit (it keeps uploading until this happens).

BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."

"In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."

In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:

Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at *2-*3 (citations omitted).


II.     **Findings of Fact**

4

1.     Plaintiff is the copyright owner of a motion picture entitled "Creampie Young Girls 1" (the "copyrighted film").   Docket #21-2.   The film was registered on September 10, 2012 under registration number PAU003631765.  *Id.*

2.     Plaintiff has not authorized the motion picture to be copied or distributed on BitTorrent. Declaration of Matthias Schroeder Padewet ("Padewet Declaration"), ¶ 7, docket #5.

3.     Plaintiff's investigator, Copyright Defenders, Inc., used the BitTorrent file distribution network to download its motion picture, identified by file hash number 840DCF35EA1BOEA81724D0385604461FDF532606 ("Hash 840D"), from IP address 98.245.66.22.  *Id.* at ¶ 23; Docket #21-3.  As set forth in more detail below, IP address 98.245.66.22 has been identified by Internet Service Provider ("ISP"), Century Link, as belonging to Defendant Anderson.   Dockets #21, ¶ 23; #21-1.

4.     Copyright Defenders used the search function of the BitTorrent protocol to look for network users who were offering for distribution audiovisual files that were labeled with the names of Plaintiff s copyrighted Motion Picture. Copyright Defenders then conducted a download of the respective content and a careful and thorough review of that data . The Hash 840D was extracted from the original torrent file as soon as the content had been verified as a valid copy of Plaintiff s copyrighted Motion Picture.

5.     Copyright Defenders started searching for individuals making the content identified by the hash value available to the public. When a network user was located who was making that content available for distribution, Copyright Defenders downloaded a part of that file and stored other specific information in order to confirm that copying was occurring and to identify the copier by the unique IP address assigned to that individual by his/her ISP on the date and at the time of the

copying activity.

6.      Copyright Defenders identified Defendant Anderson as follows: its software is connected to the "Creampie Young Girls 1" file, an illegal version of the Plaintiff's copyrighted film.  All individuals connected to the file ("users") were investigated through downloading a part of the file placed on their computers.  Evidence of these connections are saved on Copyright Defenders' server.

7.      Copyright Defenders then obtained the IP address of each user offering the file for download. It also downloaded or otherwise collected publicly available information about the user, which is designed to help Plaintiff identify the user.  Among other things, the investigator downloaded or recorded for each file downloaded: (a) the time and date at which the file or a part of the file was distributed by the user; (b) the IP address assigned to each user at the time of copying; (c) the ISP for each user; and, in some cases, (d) the video file's metadata (digital data about the file)  such as title and file size, that is not part of the actual video content, but that is attached to the digital file and helps identify the content of the file, (e) the BitTorrent client application used by each user, (f) the global unique identifier for each file downloaded by each user, and (g) the location of most users (by state) at the time of download as determined by geolocation technology. Copyright Defenders then created evidence logs for each user and stored the information in a database.

8.      Copyright Defenders has confirmed that the digital audiovisual files downloaded by Copyright Defenders are actual copies of the Plaintiff's copyrighted film.  Because it is possible for digital files to be mislabeled or corrupted, Copyright Defenders does not rely solely on the labels and metadata attached to the files themselves to determine which motion picture is copied in the downloaded file, but also to confirm through a visual comparison between the downloaded file and the motion picture itself.

9.      As to Plaintiff's copyrighted film, the staff at Copyright Defenders has watched a copy of the copyrighted film provided by Plaintiff. The downloaded files have been carefully reviewed and compared by a visual comparison with the original motion picture.  Copyright Defenders confirms that the downloaded files contain a substantial portion of the Plaintiff's copyrighted film.

10.     Plaintiff's evidence reveals that the IP Address 98.245.66.22, identified as belonging to Defendant Derrick Anderson, connected to the hash file containing Plaintiff's copyrighted film on eighty-seven occasions from February 26, 2013 to February 27, 2013. *See* Logged Evidences of IP Address 98.245.66.22, docket #21-3.

11.     Defendant Derrick Anderson, formerly Doe #170, is an individual residing at 3015 Vail Avenue, Pueblo, Colorado 81005.   Docket #21, ¶23.   Defendant Anderson was served with a summons and the Amended Complaint in this action on September 9, 2013.  Affidavit of Service, docket #39.

12.     Anderson did not answer or otherwise respond to the Amended Complaint.

13.     The Clerk of this Court entered default against Anderson on October 15, 2013.

14.     Plaintiff seeks statutory damages, costs and attorney's fees, and injunctive relief in this case. Docket #59.

## PROCEDURAL HISTORY

Plaintiff initiated this action on May 2, 2013 against various Doe defendants.  On August 22, 2013, Plaintiff filed an Amended Complaint naming Derrick Anderson and six other defendants. Plaintiff served a summons and the Amended Complaint upon Defendant Anderson on September 9, 2013; thus, Anderson's answer or other response was due to be filed on or before September 30, 2013.  Docket #39.  However, Defendant Anderson filed no answer nor other response before the

deadline; therefore, on October 11, 2013, Plaintiff filed a Motion for Entry of Clerk's Default Pursuant to Fed. R. Civ. P. 55(a) against Defendant Anderson.  Docket #51.  An Entry of Default was docketed by the Clerk of the Court on October 15, 2013.  Docket #52.  Plaintiff filed a Motion for Default Judgment against Defendant Anderson on November 8, 2013, but the motion was denied without prejudice for procedural deficiencies.  Accordingly, Plaintiff filed the present Amended Motion and Memorandum for Default Judgment Against Defendant Anderson on November 13, 2013.  Docket #59.  Sanchez did not respond to the motion within the 21-day time period as required by D.C. Colo. LCivR 7.1(d).

The Court is sufficiently advised and recommends as follows.

## LEGAL STANDARDS

Fed. R. Civ. P. 55 governs motions for default judgment.  Rule 55(b)(2) provides the authority for the District Court to enter default judgment.  After an entry of default, a defendant cannot defend a claim on the merits.  *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("'[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]'") (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (finding that "[a] default judgment is unassailable on the merits.")); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.  *See McCabe v. Campos*, No. 05-cv-00846-RPM, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)).  In determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true.  *Id.*

8

(citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1957) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded").  In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)).  A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## ANALYSIS

Upon review of the record, the Court recommends finding that default judgment be entered in Plaintiff's favor against Defendant Anderson pursuant to Fed. R. Civ. P. 55(b)(2) as follows.

**I.      Jurisdiction and Liability**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200,

1203 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default

judgment); *see also Dennis Garber & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir.

1997) (district court erred in failing to determine personal jurisdiction issue before considering entry

of default judgment).  Here, the record reveals that Defendant Anderson resides in Colorado and was

served with process at his place of abode, 1661 Washington St., Unit A, Denver, Colorado.  *See*

docket #17.  As such, the Court has personal jurisdiction over Defendant Anderson.  In addition, this

is a copyright infringement case, and the federal courts have original jurisdiction in such cases.  *See*

28 U.S.C. § 1338.  The Copyright Act creates a cause of action in favor of the owner of a copyright

for direct infringement.  17 U.S.C. § 501.

Furthermore, taking its allegations as true, Plaintiff has established a violation of its

copyrighted work by Defendant Anderson, in that a computer at Defendant Anderson's residence

participated in an illegal download of its motion picture.  A plaintiff is entitled to a determination

of liability unless it has failed to state a legal basis for relief or it is clear from the face of the

complaint that the allegations are not susceptible of proof.  *Weft, Inc.*, 630 F. Supp. at 1143.  Here,

Plaintiff alleges the following summarized claims:

- Defendant installed BitTorrent client software onto a computer to serve as the interface during the downloading/uploading process.  First Amended Complaint, Docket #21, at ¶46.

- Defendant visited a torrent site that contained an index of files being made available by other users for copying and downloading. *Id.* at ¶¶47-48.

- Using the BitTorrent protocol, Defendant then joined a BitTorrent swarm where he downloaded the Motion Picture from and uploaded the Motion Picture to the other members of the swarm. *Id.* at ¶51.

- Thus forming part of a BitTorrent swarm, Defendant participated in the process by which the Motion Picture was broken up into many pieces and distributed amongst the swarm members, resulting in the rapid viral

sharing of the file throughout the collective peer users. *Id.* at ¶¶55-56.

- Through use of the BitTorrent protocol, Defendant republished and duplicated Plaintiff's Motion Picture in an effort to deprive Plaintiff of its exclusive rights in the Motion Picture under the Copyright Act. *Id.* at ¶65.

- Defendant's acts of infringement were willful, intentional, in disregard of and with indifference to the rights of Plaintiff. *Id.* at ¶70.

Motion, docket #59 at 5.

There are two elements to a copyright infringement claim: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). The plaintiff bears the burden of proof on both elements. *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir. 2005)).

Here, Plaintiff alleges it owns the copyrights to a motion picture, and provides the registration number, publication date and registration date for the film. Docket ##21 and 21-2. The Court takes Plaintiff's well-pleaded allegations as true.

For the second element, Plaintiff must prove that Defendant Anderson "'unlawfully appropriated protected portions of the copyrighted work.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993)). "This requires proving both: (1) that [Anderson,] as a factual matter, copied portions of Plaintiff's work; and (2) that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.*; *see also Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 942 (10th Cir. 2002).

"A plaintiff can indirectly prove copying (in a factual sense) 'by establishing that a defendant

11

had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77.F3d 1280, 1284 (10th Cir. 1996)). "A plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *Id.* (quoting *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993)). "Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, 'evidence that only creates a bare possibility that the defendant had access is not sufficient.'" *Id.* (quoting *Mag Jewelry Co. v. Cherokee, Inc.,* 496 F.3d 108, 117 (1st Cir. 2007)).

Once copying has been established, "'liability for copyright infringement will attach only where protected elements of a copyrighted work are copied.'" *Id.* at 1180 (quoting *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284). "The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *Id.* Substantial similarity is measured by whether an "ordinary observer," who is not specifically looking for disparities, would tend to overlook any differences between the works. *Id.*

In this case, Plaintiff has sufficiently alleged that Defendant Anderson copied its protected work by demonstrating, through verified testimony, that its investigator downloaded from Defendant Anderson's IP address a copy of the file hash from the BitTorrent file distribution network (accessed by Anderson) and confirmed through independent calculation that the file hash matched Plaintiff's copyrighted work. Plaintiff's investigator then verified that the digital media file correlating to the file hash number contained a "substantial portion" of Plaintiff's motion picture. Taking these well-pled allegations as true, the Court finds that Plaintiff has established that Defendant Anderson

copied Plaintiff's copyright protected work and recommends that the District Court find Defendant Anderson has committed a direct infringement of the Copyright Act against Plaintiff as set forth in Count I of the Amended Complaint.

Plaintiff also asserts a claim for contributory infringement.  Plaintiff alleges that Anderson participated in a BitTorrent "swarm" with other peers to cause the infringement of its copyrighted film by other Defendants and swarm members.  Taking as true Plaintiff's allegations concerning Anderson's actual access to Hash 840D, the Court finds that he and at least one other Defendant accessed the file on the same date [*see* docket #21-3] and, thus, the allegations demonstrate a plausibility that Anderson participated with that Defendant in the same BitTorrent swarm.  *See Patrick Collins, Inc.*, 2013 WL 359759, at *2 ("to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier))."  Accordingly, the Court recommends that the District Court find the Plaintiff has demonstrated Defendant Anderson's liability as to contributory infringement as set forth in Count II of the Amended Complaint.

## II.    Damages

Here, Plaintiff seeks statutory damages and costs for the copyright infringement.  Under federal copyright law, "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  Damages may be increased to up to $150,000 if the infringement is willful.  17 U.S.C. § 504(c)(2).

In this case, Plaintiff seeks $9,250.00 on the basis of its allegation of willful infringement.

Plaintiff also seeks proportionate attorney's fees and costs, in the amount of $650.00.[2]  These are also authorized under the statute.  *Id.* § 505.  Finally, Plaintiff seeks a permanent injunction, pursuant to 28 U.S.C. § 502, enjoining Defendant Anderson from:

> from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture [], including without limitation by using the Internet to reproduce or copy Plaintiff's Motion Picture, to distribute Plaintiff's Motion Picture, or to make Plaintiff's Motion Picture available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Each Defendant shall also destroy all copies of Plaintiff's Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of the downloaded Motion Picture transferred onto any physical medium or device in each Defendant's possession, custody, or control.

Docket #21 at ¶80.  Notably, 17 U.S.C. § 503(b) provides that "the court may order the destruction ... of all copies ... found to have been made or used in violation of the copyright owner's exclusive rights."

This case is one of dozens filed in this District and handled by me as Magistrate Judge. It is also one of hundreds or perhaps thousands filed around the country in recent years by Plaintiff and other owners of pornographic films.  Many of the defendants named in these lawsuits settle very early in the case.  Some of those who do not settle have denied any participation in copyright infringement.  Other defendants allege that their wireless connection may have been used by someone else to participate in the alleged swarm against Plaintiff's protected movies.

However, in this case, there is no evidence that anyone other than Defendant Anderson

---

[2] Plaintiff claims it has incurred costs in the amount of $170.00 and attorneys' fees in the amount of $480.00.  Docket #60, ¶11.

14

committed the infringements, and evidence exists of his infringement.  Despite being informed

both before and during this litigation of the allegations against him, Defendant Anderson has

failed to answer or otherwise defend himself in this case.  For these reasons, I believe that

Plaintiff has established entitlement to willful infringement damages.

Courts across the Country have awarded $2,250.00 per infringement in cases of this type,

and I have awarded that amount in cases nearly identical to this one.  Thus, I  find that a statutory

damage award of $2,250.00 for the infringement is appropriate and just in this case to

accomplish the intent set forth by Congress in passing the Copyright Act.  In addition, Plaintiff's

request for $650.00 for attorney's fees and costs should be granted.

Finally, Plaintiff seeks injunctive relief prohibiting Defendant Anderson from infringing

Plaintiff's copyrighted work and requiring Defendant Anderson to delete the torrent file relating

to Plaintiff's movies from each computer in Defendant Anderson's possession, custody or

control, and to delete any actual copy of Plaintiff's copyrighted work from such computers.  The

Court finds that Plaintiff's request for an order directing Defendant Anderson to "destroy all

copies of Plaintiff's Motion Picture" from "any computer hard drive or server without Plaintiff's

authorization" that are within Defendant Anderson's "possession, custody, or control" is a

reasonable request and should be granted.

Plaintiff has failed to proffer evidence sufficient to justify its request to enjoin Defendant

Anderson "from directly or indirectly infringing Plaintiff's rights in the copyrighted motion

picture"; Plaintiff has produced no evidence that, as of this date, Defendant Anderson actually

possesses the copyrighted work on his computer(s) and continues to upload them to others.  The

Court notes that, if the District Court were to grant Plaintiff's requested injunction for the

deletion of Plaintiff's copyrighted work on Defendant Anderson's computer(s), he would be unable to continue uploading the work via the BitTorrent system.  Therefore, the Court recommends that the District Court deny Plaintiff's request for an order enjoining Defendant Anderson from directly or indirectly infringing on Plaintiff's copyrighted work.

**CONCLUSION**

Based on the foregoing, and the entire record provided to the Court, I do respectfully RECOMMEND that the District Court **GRANT IN PART AND DENY IN PART** Plaintiff's Amended Motion and Memorandum for Default Judgment against Derrick Anderson [filed November 13, 2013; docket #59] as follows:

1.    Enter judgment in Plaintiff's favor against Defendant Derrick Anderson for direct copyright infringement of Plaintiff's copyrighted work, as set forth in Count I of the Amended Complaint;

2.    Order Defendant Anderson to pay to Plaintiff the sum of $2,250.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $650.00  for attorney's fees and costs as authorized by 17 U.S.C. § 505;

3.    Order Defendant Anderson to permanently destroy all the digital media files relating to, and copies of, Plaintiff's copyrighted work made or used by him in violation of Plaintiff's exclusive rights, as well as all master copies in his possession, custody or control from which such copies may be reproduced; and

4.    Deny Plaintiff's request for "entry of preliminary and permanent injunctions providing that [Defendant Anderson] shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture."

16

Dated at Denver, Colorado, this 11th day of December, 2013.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge